562 S.E.2d 316

**In the Matter of K. Douglas THORNTON, Respondent.**

**No. 25438.**

Supreme Court of South Carolina.

Submitted March 1, 2002.
Decided April 8, 2002.

Henry B. Richardson, Jr. and Senior Assistant Attorney General Nathan Kaminski, Jr., both of Columbia, for the Office of Disciplinary Counsel.

Irby E. Walker, Jr., of Conway, for respondent.

## PER CURIAM.

In this attorney disciplinary matter, respondent and the Office of Disciplinary Counsel have entered into an agreement pursuant to Rule 21, Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR. In the agreement, respondent admits misconduct and consents to a definite suspension of not less than thirty days nor more than nine months. We accept the agreement and suspend respondent for nine months from the date of this opinion.

### *Facts*

### I. Social Security Administration Matter

Respondent agreed to represent client in a workers' compensation matter on July 15, 1997. Respondent and client executed a fee agreement pertaining to the representation on the workers' compensation claim. Client proceeded to file a *pro se* claim with the Social Security Administration (SSA) for disability insurance benefits. On March 25, 1998, client received notice his SSA claim was denied. He asked respondent to represent him in contesting the denial by SSA. No separate fee agreement was executed.

Respondent filed a request for reconsideration of client's claim. Respondent also filed a form to appoint respondent as client's representative. The form stated that respondent would not charge client a fee unless it was approved by SSA, and that he would notify SSA if he chose not to collect a fee.

On September 21, 1998, respondent settled client's workers' compensation claim for $42,000 and was paid $10,500 as his fee. In December 1998, client received notice that SSA was granting his claim, but reducing the amount because of the workers' compensation award. On January 18, 1999, respondent filed another Request for Reconsideration to adjust the monthly payment. Respondent contacted SSA several times during the following months.

On October 19, 1999, respondent received notice that SSA was requesting benefit calculations and an itemized list of attorney's fees. On October 21, 1999, respondent sent SSA the requested benefit computations and stated that he would

forward the itemized attorney's fee bill later that day. Respondent never sent the itemized attorney's fee bill.

In January 2000, respondent notified client that he anticipated being suspended from the practice of law due to his failure to file a state income tax return. As a result of the conversation, client agreed to loan respondent $1,000. Client changed his mind when he arrived at respondent's office. However, client again changed his mind after talking with respondent and agreed to the loan. Respondent prepared a hand written promissory note dated January 14, 2000. The note calls for respondent to repay the sum of $1,000 immediately upon respondent's receipt of attorney's fees from the SSA.

On January 22, 2000, respondent received notice that SSA raised client's monthly benefit and that $1,211 was withheld to pay attorney's fees if needed. Respondent never submitted an invoice to SSA for attorney's fees. In August 2000, client contacted another attorney to discuss repayment of the $1,000 loan with respondent. Respondent indicated that because he was suspended from the practice of law he was unable to prepare a statement of attorney's fees. On March 14, 2001, after client had contacted Disciplinary Counsel, respondent sent a letter to SSA waiving any attorney's fees and asking that any funds withheld be sent to client.

On January 23, 2001, Disciplinary Counsel provided notice of the complaint and requested a response from respondent. On February 23, 2001, after receiving no response, Disciplinary Counsel wrote respondent a *Treacy* letter.[1] Respondent submitted an untimely response on March 15, 2001.

## II. Construction Claim Matter

Clients retained respondent to represent them in a dispute with a developer and general contractor concerning defects in the construction of their residence. On March 12, 1990, respondent filed a summons and complaint against the developer. On September 18, 1990, the court entered an order of default against the developer and granted respondent's motion to amend the pleadings to name the general contractor as an

---

1. *In the Matter of Treacy*, 277 S.C. 514, 290 S.E.2d 240 (1982).

additional defendant. The order deferred entering a judgment against the developer pending a hearing on the merits.

Thereafter, respondent filed an amended complaint naming the general contractor as a defendant. Because the case had been stricken from the docket by agreement, it was reinstated and re-numbered. Before the trial was completed, clients and the general contractor reached an agreement whereby the contractor agreed to make repairs and make a cash payment to clients. In return, clients agreed not to execute on any judgment which might subsequently be obtained against the contractor in excess of $11,500. On May 15, 1992, an order was signed confirming the agreement and entering a judgment against the developer in the amount of $21,172. The order specifically stated that in the event of a default by the contractor, clients would be entitled to petition for judgment against the contractor, not to exceed $11,500.

The general contractor did not make the repairs as required by the agreement. As a result, respondent filed a new suit against the contractor asking for specific performance or, in the alternative, an award of $11,500. When the contractor failed to file an answer, respondent filed an affidavit and order of default. However, respondent did not subsequently apply to the court for judgment against the general contractor or proceed with a damages hearing. As a result, respondent failed to protect clients' interest by obtaining and recording a judgment against the contractor.

Instead, respondent filed another action entitled "Complaint for Examination of Defendant in Supplemental Proceedings" under the old docket number. He also filed an "Affidavit to Obtain Order to Examine Defendant in Supplemental Proceedings." The affidavit stated that a judgment was obtained against the contractor in the sum of $11,500, based on the judgment dated May 15, 1992. Respondent admits he should have known that he never obtained a money judgment against the general contractor, and that the order of May 15, entered a judgment against the developer.

Respondent did not collect any proceeds as a result of the supplemental proceedings. Additionally, respondent dismissed the judgment against the contractor on the separate

suit stating that it had been settled. Respondent admits he never consulted with clients prior to dismissing the action.

After respondent's representation of clients ended, a foreclosure action was brought against the general contractor. Clients submitted a claim on any additional funds believing respondent had perfected a judgment against the contractor for the $11,500 based on the May 15 judgment. The Master–In–Equity ruled that the May 15 judgment was not a judgment against the contractor, but solely against the developer. Therefore, the Master ruled clients did not have a valid claim to any of the surplus funds.

On June 22, 2001, Disciplinary Counsel commenced a preliminary investigation and requested respondent file a response. Respondent failed to respond in a timely manner. On July 10, 2001, after receiving no response, Disciplinary Counsel wrote respondent a *Treacy* letter. Respondent submitted an untimely response on September 4, 2001.

### *Law*

By his conduct, respondent has violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (a lawyer shall provide competent representation to a client); Rule 1.2 (a lawyer shall abide by a client's decisions concerning the objectives of representation, and shall consult with the client as to the means by which they are pursued); Rule 1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client); Rule 1.4 (a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information; a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation); Rule 1.8 (a lawyer shall not enter into a business transaction with a client unless the transaction and terms are fair and reasonable, the client is given the opportunity to seek advice of independent counsel, and the client consents in writing); Rule 8.1 (failing to respond to a lawful demand for information regarding a disciplinary matter); Rule 8.4(a) (violating the Rules of Professional Conduct); Rule 8.4(d)(engaging in conduct involving dishonesty, fraud, deceit or misrepresenta-

tion); and Rule 8.4(e) (engaging in conduct prejudicial to the administration of justice).

Respondent has also violated the following provisions of the Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR: Rule 7(a)(1) (violating the Rules of Professional Conduct); Rule 7(a)(3)(failing to respond to a lawful demand from a disciplinary authority); Rule 7(a)(5) (engaging in conduct tending to pollute the administration of justice or to bring the courts or the legal profession into disrepute or conduct demonstrating an unfitness to practice law); and Rule 7(a)(6) (violating the oath of office taken upon admission to practice law in this state).

### *Conclusion*

Respondent has fully acknowledged that his actions were in violation of the Rules for Lawyer Disciplinary Enforcement and the Rules of Professional Conduct. We therefore suspend respondent from the practice of law for nine months. Within fifteen days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30, Rule 413, SCACR.

**DEFINITE SUSPENSION.**

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.